IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **ROBERT DAVID BRACKEN,** § § § **Plaintiff,** § § **v.** § § **SOCIAL SECURITY ADMINISTRATION COMMISSIONER, DR. KILOLO KIJAKAZI;** § § § § § **Defendant.** § | **CIVIL ACTION NO. 6:23-CV-00022-JCB** |

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Before the court is Defendant Commissioner of Social Security's motion to dismiss. (Doc. No. 9.) Plaintiff Robert David Bracken has filed a response (Doc. No. 11), to which Defendant has filed a reply (Doc. No. 15), and Plaintiff has filed a sur-reply (Doc. No. 22). For the reasons stated herein, the court **RECOMMENDS** that Defendant's motion (Doc. No. 9), converted to a motion for summary judgment, be **DENIED**.

BACKGROUND

This case has a long and complex procedural history. On October 9, 2012, Plaintiff protectively filed an application for Title II benefits with the Social Security Administration ("SSA"). (Doc. No. 9-1, at 16.) The SSA granted a fully favorable decision on October 22, 2014. *Id.* at 5–16. On April 28, 2015, in response to a routine agency request, Plaintiff provided the SSA with information regarding his worker's compensation benefits. *Id.* at 17–19.

On March 9, 2016, the SSA issued a Notice of Change in Benefits. *Id.* at 27–32. The notice stated: "We paid you $697.40 for October 2011 through February 2016. Since we should have paid

1

you $26,450.40 for October 2011 through February 2016, we paid you $74,247.00 less than you were due." *Id.* at 27. The SSA then determined that it had overpaid Plaintiff $50,963.00 and demanded that he repay the money within 30 days. *Id.* On April 5, 2016, Plaintiff filed a request for reconsideration, and on September 6, 2016, the SSA issued a second Notice of Change in Benefits. *Id.* at 33–41. The second notice stated that the SSA had overpaid Plaintiff $2,005.00 in benefits and again demanded that he repay the money within 30 days. *Id.* at 37. On September 14, 2016, Plaintiff filed another request for reconsideration. *Id.* at 42–46. On December 14, 2016, the SSA issued a response to Plaintiff's April 5, 2016 request for reconsideration in an untitled document from the Mid-Atlantic Program Service Center. *Id.* at 47–52. The document provided a comprehensive breakdown of the calculation that would be necessary to compute the overpayment, but stated, "a separate letter will be sent to you shortly regarding the overpayment amount and your appeal rights." *Id.* The document also acknowledged the SSA's previous miscalculations and typos and stated that Plaintiff had the right to request a hearing before an Administrative Law Judge ("ALJ"). *Id.*

On January 3, 2017, the SSA issued a third Notice of Change in Benefits. *Id.* at 53–56. This notice stated the overpayment total was $19,135.00, apparently pursuant to the December 14, 2016 document. *Id.* at 53. There was no statement as to the time period in which the overpayment occurred, and there was no explanation of how the overpayment was calculated. *Id.* The document stated that Plaintiff had the right to request a reconsideration determination but did not state that he had the right to request a hearing before an ALJ. *Id.* at 55. On January 13, 2017, Plaintiff simultaneously filed a request for reconsideration of the January 3, 2017 overpayment decision at his local field office in Longview, Texas, and a written request for an ALJ hearing. *Id.* at 57–60.

On April 15, 2019, ALJ Mark J. Mendola requested that the SSA clarify the amount of the overpayment, when it occurred, and how it was calculated, but the field office did not respond in a timely manner. *Id.* at 64–65. The ALJ then requested assistance from the regional SSA office in obtaining proper documentation of the overpayment amount and the underlying calculation, however, he was still unable to receive clarification. *Id.* at 65.

On August 28, 2019, the Mid-Atlantic Program Service Center, in a document titled "Important Information," stated that Plaintiff had been overpaid $21,140.00 through December 2016 with no documentation as to how this overpayment amount was calculated. *Id.* This document was not in response to the ALJ's request for clarification on April 15, 2019. *Id.*

On September 12, 2019, ALJ Mendola issued an Order of Dismissal and Remand to Field Office. *Id.* at 64–65. After reviewing the procedural history of the case, the ALJ found that he lacked jurisdiction to rule on the merits because the January 3, 2017 Notice of Change in Benefits stated that Plaintiff had the right to request a reconsideration determination, not that he had the right to request an administrative hearing. *Id.* at 65. Because Plaintiff did not have the right to request a hearing, the ALJ found that he did not have jurisdiction. *Id.* Thus, the ALJ dismissed the request for a hearing pursuant to 20 C.F.R. § 404.957(c)(2) and the SSA's *Hearings, Appeals and Litigation Law Manual* Chapter I-2-4-30 and remanded the case to "the appropriate Social Security Field Office for a technically correct reconsideration determination, based on [Plaintiff's] request for reconsideration dated April [5], 2016, and for full and explicit documentation as to how overpayment was calculated and the time periods at issue." *Id.* Although he remanded the case due to lack of jurisdiction, the ALJ stressed that "any reconsideration-level determination finding an overpayment should contain specific, non-conclusory documentation explaining the amounts

3

overpaid to the claimant" because the record at the time was inadequate for him to issue a cogent decision even if he had jurisdiction. *Id.*

Plaintiff filed requests for review of the ALJ's dismissal on October 16 and November 4, 2019. *Id.* at 100–09. On January 28, 2020, the Appeals Council denied these requests, and sent the case back to the Mid-Atlantic Program Service Center for a reconsideration determination on overpayment as directed by the ALJ's order of dismissal. *Id.* at 136–37.

On March 25, 2020, Plaintiff filed a civil action in this court challenging the overpayment calculation. *Bracken v. Commissioner*, SSA, No. 6:20-cv-00148, 2021 WL 8441756, at *1 (E.D. Tex. July 22, 2021). On July 22, 2021, the court dismissed Plaintiff's claims without prejudice for failure to exhaust administrative remedies. *Id.* On December 8, 2022, the Mid-Atlantic Program Service Center, in an untitled document, dismissed Plaintiff's April 5 and September 14, 2016 requests for reconsideration after finding that Plaintiff was actually requesting an explanation of the overpayment calculation, not reconsideration of the overpayment calculation, and forwarded his request for an explanation to another component for processing. (Doc. No. 9-1, at 138.)

On January 12, 2023, Plaintiff filed the present action challenging the overpayment calculation. (Doc. No. 1.) On June 5, 2023, Defendant filed a motion to dismiss for failure to exhaust administrative remedies. (Doc. No. 9.) Plaintiff filed a response on June 20, 2023, arguing that SSA POMS GN 03102.100(C)(5) says that a dismissed request for reconsideration is a non-appealable order making it a final decision for purposes of judicial review under Section 405(g). (Doc. No. 11.) On June 27, 2023, seven days after Plaintiff filed his response, the Mid-Atlantic Program Service Center issued a reconsideration determination of Plaintiff's overpayment calculation and informed him of his right to appeal the decision to an ALJ. (Doc. No. 15-2.) The reconsideration determination affirmed the September 6, 2016 Notice of Change in Benefits

finding a $2,005.00 overpayment and the January 3, 2017 Notice of Change in Benefits finding a $19,135.00 overpayment, concluding that Plaintiff was overpaid $21,140.00 in total, with $14,212.00 remaining to be paid. *Id.* at 8. On July 31, 2023, Defendant filed a reply, arguing that Plaintiff has failed to exhaust his administrative remedies because he has not appealed the June 27, 2023 reconsideration determination to an ALJ. (Doc. No. 15.) On August 30, 2023, Plaintiff filed a sur-reply. (Doc. No. 22.)

## LEGAL STANDARD

### I.      Summary Judgment

Defendant filed the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6), however, because both parties submitted matters outside of the pleadings, the motion will be treated as a motion for summary judgment. Fed.R.Civ.P. 12(d). (Doc. Nos. 9, 11, 15.) A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law.

5

*Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Tex. Instruments*,

100 F.3d at 1179.

## II.  Exhaustion of Administrative Remedies

A federal court's authority to review a decision by the SSA of a claimant's disability benefits is found in 42 U.S.C. § 405 (g) and (h). Section 405(g) "sets the terms of judicial review" of a decision of disability or termination of Title II or Title XVI benefits by the SSA. *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Section 405(g) provides that a claimant may file a civil action "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g). Section 405(h) provides that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h). The Fifth Circuit has interpreted this standard as applying "only where the would-be plaintiff is challenging a decision regarding his entitlement to benefits." *Matter of Benjamin*, 932 F.3d 293, 301 (5th Cir. 2019). Furthermore, Section 405(g) only allows review upon a "final decision of the Commissioner." 42 U.S.C. § 405(g).

The "final decision" requirement has two elements: "first, a 'jurisdictional' requirement that claims be presented to the agency, and second, a 'waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted.'" *Smith*, 139 S.Ct. at 1773 (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). "The nonwaivable element is the requirement that a claim for benefits shall have been presented to the [Commissioner]." *Mathews*, 424 U.S. at 328; *accord Bowen v. City of N.Y.*, 476 U.S. 467, 483 (1986); *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653–54 (5th Cir. 2012). Courts have held that a claimant has "presented" a claim, for jurisdictional purposes, by taking one of the following actions: filing a claim for benefits; making an unsuccessful attempt to seek review at the administrative level; giving an

indication, in writing, that benefits should not be terminated; or reporting a change in status. *See Heckler v. Day*, 467 U.S. 104, 107 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 762–63 (1975); *Ellison v. Califano*, 546 F.2d 1162, 1164 (5th Cir.1977). Absent such "presentment," there is "no 'decision' of any type [and] some decision by the [Commissioner] is clearly required by the statute." *Mathews*, 424 U.S. at 328. The nonjurisdictional element of exhaustion may be waived by the Commissioner, or in extraordinary circumstances, by the courts. *Smith*, 139 S.Ct. at 1773–74; *see also Chambers v. Berryhill,* No. 3:19-CV-1062-K-BH, 2020 WL 5099829, at *5 (N.D. Tex. Aug. 12, 2020), *report and recommendation adopted sub nom.*, *Chambers v. Soc. Sec., Admin.*, No. 3:19-CV-1062-K-BH, 2020 WL 5094684 (N.D. Tex. Aug. 29, 2020).

A claimant receives a final decision after proceeding through a four-step administrative process with the SSA. *Smith*, 139 S. Ct. at 1772. "First, the claimant must seek an initial determination as to his eligibility. Second, the claimant must seek reconsideration of the initial determination. Third, the claimant must request a hearing, which is conducted by an ALJ. Fourth, the claimant must seek review of the ALJ's decision by the Appeals Council." *Id.*; *see* 20 C.F.R. § 416.1400(a). Upon a decision by the Appeals Council, the plaintiff then has a final decision from which he can appeal in federal court. 20 C.F.R. § 416.1400(a); *see Chambers*, 2020 WL 5099829, at *5; *Smith*, 139 S. Ct. at 1772.

Again, by completing the four administrative steps, a plaintiff is said to have "exhausted" their remedies. *See Bowen,* 476 U.S. at 472. As noted above, however, either the Commissioner or the court may waive such requirement. *Smith*, 139 S. Ct. at 1773–74. "The [Commissioner] may waive the exhaustion requirement if '[s]he satisfies [her]self, at any stage of the administrative process, that no further review is warranted.'" *Home Health Innovations, Inc. v. Sebelius*, No. SA-14-CA-124, 2014 WL 12540881, at *3 (W.D. Tex. Feb. 18, 2014) (citing *Mathews*, 424 U.S. at

330); *see also Weinberger*, 422 U.S. at 766–67 ("While a court may not substitute its conclusion as to futility for the contrary conclusion of the Secretary, we believe it would be inconsistent with the congressional scheme to bar the Secretary from determining in particular cases that full exhaustion of internal review procedures i[s] not necessary for a decision to be 'final' within the language of § 405(g)."). The Fifth Circuit has recognized that waiver may be warranted where:

> (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim.

*Taylor v. United States Treasury Dep't*, 127 F.3d 470, 477 (5th Cir. 1997); *see Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007). The Fifth Circuit has also found that "exhaustion may be excused when . . . irreparable injury will result absent immediate judicial review." *Id.* (citing *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978)). If none of these circumstances are present, however, the claimant must return to the agency and exhaust administrative remedies. *See id.* Then, "once these remedies are exhausted, if complete relief has not been obtained, [the claimant] can return to court" to challenge the agency's decision. *Taylor*, 127 F.3d at 478 (quoting *Seniority Rsch. Grp. v. Chrysler Motor Corp.*, 976 F.2d 1185, 1189 (8th Cir. 1992)).

However, "[t]he ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of [these] factors but should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484. Not barring the application of the factors and consideration of the policies underlying the exhaustion requirement, courts have held that exhaustion should only be waived "in extraordinary circumstances." *See Mitchell v. Soc.*

9

*Sec. Dep't*, No. H-12-2402, 2012 WL 6049071, at *4 (S.D. Tex. Nov. 13, 2012), *report and recommendation adopted*, No. H-12-2402, 2012 WL 6051530 (S.D. Tex. Dec. 5, 2012); *Lowe v. Colvin*, 582 F. App'x 323, 326 (5th Cir. 2014).

### DISCUSSION

Defendant asserts that Plaintiff failed to exhaust his administrative remedies prior to filing the instant case. (Doc. No. 9, at 5.) Initially, Defendant argued in his motion to dismiss that Plaintiff had failed to exhaust his administrative remedies because no final appealable decision had been issued by the agency. *Id.* Defendant contended that because the ALJ dismissed Plaintiff's case and remanded it back to the agency for a reconsideration determination on overpayment, there was no decision by the Appeals Council presently appealable to this court. *Id.*

Plaintiff, in response, claims that the December 8, 2022 letter, the last document issued by the SSA when this case was filed and when Defendant filed its motion to dismiss, was a final decision pursuant to SSA POMS GN 03102.100(C)(5). (Doc. No. 11, at 1–2.) Under Section 5, "[d]ismissal of a request for reconsideration is the rejection or refusal to accept the request. The action makes the prior determination the final determination of the Commissioner. A dismissal is not subject to any appeals." SSA POMS GN 03102.100(C)(5). Plaintiff contends that because Section 5 says that a dismissal of a request for reconsideration is a final decision not subject to appeal, then he has a final decision for purposes of judicial review pursuant to Section 405(g). (Doc. No. 11, at 2.)

Seven days after Plaintiff filed his response, the Mid-Atlantic Program Service Center issued Plaintiff a reconsideration determination on overpayment of benefits, with instructions on how to appeal the agency's decision to an ALJ. (Doc. Nos. 15-1, 15-2.) Defendant then filed a reply asserting that Plaintiff had failed to exhaust his administrative remedies because he has an

10

appealable reconsideration determination pending at the date of this filing that has not yet been appealed to an ALJ. (Doc. No. 15, at 2.)

## I. Administrative Process

As discussed above, in order for the court to consider Plaintiff's claims, he must have a final decision from the Commissioner. *See* 42 U.S.C. § 405(g). The parties do not dispute that Plaintiff has presented his claims to the agency; the only question is whether Plaintiff exhausted his administrative remedies. To exhaust his administrative remedies, Plaintiff was required to (1) obtain an initial decision from the Commissioner on his continued receipt of benefits; (2) request a reconsideration of that decision; (3) request a hearing before an ALJ; and (4) request review of the ALJ's decision from the Appeals Council. 20 C.F.R. § 416.1400(a).

Here, Defendant is correct that, as the case currently stands, Plaintiff does not have a final decision from the Commissioner because he has not exhausted his administrative remedies. (Doc. No. 15, at 2.) Plaintiff just received a reconsideration determination, and he has not yet appealed that decision to an ALJ. (Doc. Nos. 15-1, 15-2.) Thus, Plaintiff is only at Step Two of the administrative process. *See* 20 C.F.R. § 416.1400(a). Because there is not a final decision subject to judicial review under Section 405(g), Plaintiff's claims should be dismissed, unless the court finds that waiver exists.

## II. Waiver of Exhaustion by the Commissioner

Defendant does not address waiver of exhaustion but given that the Commissioner continues to challenge Plaintiff's claims as improper due to his failure to exhaust administrative remedies (Doc. Nos. 9, 15), the court infers that Defendant has not waived the requirement. Because the Commissioner has not waived the requirement of exhaustion of administrative remedies, the court examines the applicability of judicial waiver.

11

**III.     Waiver of Exhaustion by the Court**

As set forth above, a court may waive exhaustion of administrative remedies where (1) the legal claims are collateral to the demand for benefits, (2) the harm suffered pending exhaustion would be irreparable, and (3) exhaustion would be futile. *See Chambers*, 2020 WL 5099829, at *6; *see Chamberlain v. Barnhart*, 382 F. Supp. 2d 867, 872 (E.D. Tex. 2005); *Mack v. Astrue*, No. 09-3337, 2010 WL 2218239, at *4 (S.D. Tex. May 14, 2010), *report and recommendation adopted*, No. H-09-3337, 2010 WL 2218227 (S.D. Tex. June 2, 2010).

As to whether Plaintiff's claim is collateral, if a plaintiff asserts that an SSA regulation conflicts with the Constitution or the Social Security Act, his claim is collateral. *Anderson v. Sullivan*, 806 F. Supp. 134, 137 (E.D. Tex. 1992). But "where a plaintiff asserts that a policy or regulation has been incorrectly applied to his claim for benefits, he is asserting a substantive claim of entitlement to benefits." *Id.*; *see also Chamberlain*, 382 F. Supp. 2d at 874 (finding that where "plaintiff asserts no constitutional claim which could be construed as collateral to her claim for benefits . . . exhaustion of remedies cannot be waived on that basis"); *Mack*, 2010 WL 2218239, at *4 (holding that a "claim is not collateral so as to waive the exhaustion requirement if it is inextricably intertwined with a substantive claim of administrative entitlement") (quotations omitted). Here, Plaintiff's claim is not collateral to his claim for benefits. Indeed, the heart of Plaintiff's claim is that the SSA incorrectly calculated the amount of overpayment. (Doc. No. 6, at 5.) Although Plaintiff has framed his claims as arguments that SSA policies are in conflict with federal law (*id.*), they relate directly to his claim for benefits—the amount to which he is entitled, how the overpayment was calculated, and whether he was actually underpaid. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285–86 (5th Cir. 1999) (explaining that when a constitutionally-based claim is "'inextricably intertwined' with a substantive claim of

12

administrative entitlement," it is not collateral so as to waive the exhaustion requirement). Plaintiff is not challenging the constitutionality of the process; rather, he is asserting that the SSA erred when it concluded he had been overpaid. Thus, this factor does not support waiver of exhaustion of administrative remedies.

The court also finds that there is not a reasonable basis to conclude that Plaintiff will suffer irreparable harm pending exhaustion. To "meet the irreparability requirement for waiver, the claimant must show that denial of relief will cause a harm; it does not account for past injuries." *Chambers*, 2020 WL 5099829, at *7 (citing *Griego v. Leavitt*, No. 3:07-CV-1708-D, 2008 WL 2200052, at *11 (N.D. Tex. May 16, 2008)). Courts have found irreparable injury where the plaintiff had a short life expectancy or faced life-threatening medical ailments. *See Anderson*, 806 F. Supp. at 137–38 ("Plaintiff is infected with HIV, the virus that causes AIDS; his life expectancy is probably rather short. The need for a speedy resolution in a case such as this is obvious if the plaintiff, rather than his estate, is to obtain the benefit of a favorable decision. Remitting plaintiff to his administrative remedies may exhaust more than the administrative remedies provided by the SSA; it may exhaust most of plaintiff's remaining life span." (footnote omitted)); *compare with Mack*, 2010 WL 2218239, at *4 (finding no irreparable injury where plaintiff alleged that the SSA had "caused inordinate delays in his attempts to get disability benefits" and that exhausting his administrative remedies would result in "harm and injury due to the stress and the ordeal of having to go through the inadequate appeal process[, which] will also trigger a medical set back"). "If 'the agency's wrongful decision can be rectified with retroactive payments, the claim presents no danger of irreparable harm or futile pursuit of administrative remedies.'" *Chambers*, 2020 WL 5099829, at *7; *see also Chamberlain*, 382 F. Supp. 2d at 873 (citing *Mathews*, 424 U.S. at 330–32). Although this case has been unnecessarily prolonged, Plaintiff does not present evidence that

13

he has a disease that may exhaust him before the administrative process runs its course or that retroactive payments would not make him whole. The court therefore finds that this factor does not support waiver of exhaustion of administrative remedies.

When Plaintiff filed his first civil action challenging the overpayment determination, the court noted that judicial waiver was not appropriate because although it was frustrating that the administrative process had yet to result in a final decision subject to judicial review, once there was a final decision from the Commissioner, Plaintiff could seek judicial review regarding his claims. The court acknowledged, however, that "upon continued delay, waiver of exhaustion of administrative remedies by the court may become proper." Since his case was dismissed by the court on July 22, 2021, there have been two relevant updates in this case: the December 8, 2022 dismissal of his April 5 and September 14, 2016 requests for reconsideration of the overpayment decisions, and the June 27, 2023 reconsideration determination. Two updates in two years, one of which came *only after* Plaintiff argued that an SSA policy permitted judicial review of the agency's dismissal of his requests for reconsideration. Thus, the only reason Plaintiff has yet to exhaust his administrative remedies is because of what appears to be an intentional effort by the SSA to delay a final decision for the purpose of evading judicial review.

Plaintiff has been appealing an overpayment determination that even the court cannot make sense of for over *seven* years. When Plaintiff requested reconsideration of the March 9, 2016 overpayment decision on April 5, 2016, the SSA issued a notice of change in benefits, changing the amount Plaintiff had been overpaid. (Doc. No. 9-1, at 33–41.) When Plaintiff requested another reconsideration determination as to the new overpayment amount, the SSA issued an untitled response to his April 5, 2016 request, acknowledging that the March 9, 2016 determination was wrong. *Id.* at 42–52. The SSA subsequently issued another notice of change in benefits, changing

14

the amount of overpayment again. *Id.* at 53–56. It is entirely unclear why these responses and notices were not reconsideration determinations appealable to an ALJ. This case has been pending far too long to resolve an issue that began with an incoherent overpayment decision on March 9, 2016. What happened next was seven years of notices, responses, dismissals, and remands, none of which constituted a final decision subject to judicial review, despite Plaintiff's best efforts to exhaust his administrative remedies.

The December 8, 2022 dismissal of Plaintiff's requests for reconsideration came after the SSA determined that for the past six years he was not *really* requesting reconsideration of the overpayment determinations but rather explanations for the overpayment decisions, when the record clearly reflects that Plaintiff repeatedly sought reconsideration of the overpayment determinations, not explanations. (Doc. Nos. 9-1, at 138; 11-2, at 6–8.) Finally, when Plaintiff thought this court *might* have jurisdiction to review his claims, arguing in his response to Defendant's motion to dismiss that the SSA's December 8, 2022 dismissal of his April 5 and September 14, 2016 requests for reconsideration *was* a final decision for purposes of judicial review under Section 405(g), the SSA issued a reconsideration determination seven days later, taking him back to Step Two of the administrative process. The court fails to see how these acts amount to anything less than an intentional effort to delay final resolution.

For these reasons, the court now finds that the SSA has continually, and perhaps deliberately, delayed a final decision appealable to this court, and Plaintiff's attempts to exhaust his administrative remedies over the past seven years have proven futile. There is no telling how much longer the case will go on if Plaintiff was required to appeal the reconsidered determination to an ALJ and the Appeals Council and, given this record, whether exhausting his administrative remedies would actually result in final decision reviewable by the court. The court therefore finds

that this case presents the "extraordinary circumstances" where waiver of exhaustion of administrative remedies is appropriate. *See Hinton v. Sullivan*, 737 F. Supp. 232, 237–38, 241 (S.D.N.Y. 1990) (finding that where a plaintiff's "repeated requests for hearings and appeals go unheeded" and the administrative process is dragged out for an exorbitant amount of time, waiver of exhaustion of remedies is appropriate).

In sum, although Plaintiff has not exhausted his administrative remedies, given the extreme delays caused directly by the actions of the SSA, the court finds that waiver of the exhaustion requirement is appropriate in this case, and it has jurisdiction to review Plaintiff's claims pursuant to Section 405(g).

## CONCLUSION

For these reasons, the court **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. No. 9), converted to a motion for summary judgment, be **DENIED**.

Within fourteen days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 5th day of September, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

16